Tanner Patterson # 21187-075
Name and Prisoner/Booking Number

USP Tucson
Place of Confinement

PO Box 24550
Mailing Address

Tucson AZ 85734
City, State, Zip Code

(Failure to notify the Court of your change of address may result in dismissal of this action.)

FILED ☐ LODGED
RECEIVED ☐ COPY

MAR - 9 2023

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Tanner Patterson,
(Full Name of Plaintiff)

Plaintiff,

v.

(1) Federal Bureau of Prisons,
(Full Name of Defendant)

(2) _____,

(3) _____,

(4) _____,

Defendant(s).

☐ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. CV-23-00119-TUC-SHR-PSOT
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**

☒ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint

## A. JURISDICTION

1. This Court has jurisdiction over this action pursuant to:
   ☐ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
   ☒ 28 U.S.C. § 1331; ~~Bivens v. Six Unknown Federal Agents, 403 U.S. 388 (1971)~~
   ☐ Other: _____

2. Institution/city where violation occurred: USP Tucson

Revised 12/1/20                                1                              **550/555**

## B. DEFENDANTS

1. Name of first Defendant: Federal Bureau of Prisons. The first Defendant is employed as: Agency - U.S. Govt. (Position and Title) at USP Tucson (Institution).

2. Name of second Defendant: _____. The second Defendant is employed as: _____ (Position and Title) at _____ (Institution).

3. Name of third Defendant: _____. The third Defendant is employed as: _____ (Position and Title) at _____ (Institution).

4. Name of fourth Defendant: _____. The fourth Defendant is employed as: _____ (Position and Title) at _____ (Institution).

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?  ☐ Yes  ☒ No

2. If yes, how many lawsuits have you filed? _____. Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _____

   b. Second prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _____

   c. Third prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _____

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

## D. CAUSE OF ACTION

### COUNT I

1. State the constitutional or other federal civil right that was violated: Violation of 8th Amendment to U.S. Constitution.

2. **Count I.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☒ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

Continued on Page 7 due to space limitations

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   See Pages 7-13, Violation of rights

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?   ☐ Yes   ☒ No
   b. Did you submit a request for administrative relief on Count I?   ☐ Yes   ☒ No
   c. Did you appeal your request for relief on Count I to the highest level?   ☐ Yes   ☒ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. See Page 13

3

# COUNT II

1. State the constitutional or other federal civil right that was violated: Violation of 29 U.S.C. 794 et seq. (Rehabilitation Act).

2. **Count II.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   ☐ Basic necessities   ☐ Mail   ☐ Access to the court   ☐ Medical care
   ☐ Disciplinary proceedings   ☐ Property   ☐ Exercise of religion   ☐ Retaliation
   ☐ Excessive force by an officer   ☐ Threat to safety   ☐ Other: _____.

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

Continued on Page 7

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   Same as Claim One.

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?   ☐ Yes   ☒ No
   b. Did you submit a request for administrative relief on Count II?   ☐ Yes   ☒ No
   c. Did you appeal your request for relief on Count II to the highest level?   ☐ Yes   ☒ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. See Page 13.

4

# COUNT III

1. State the constitutional or other federal civil right that was violated: __N\A__

2. **Count III.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☐ Yes ☐ No
   b. Did you submit a request for administrative relief on Count III? ☐ Yes ☐ No
   c. Did you appeal your request for relief on Count III to the highest level? ☐ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.

### E. REQUEST FOR RELIEF

State the relief you are seeking:

1 - Grant a permanent injunction against BOP (1) enjoining denial of Methadone or Buprenorphine to its inmate (2) enjoining further denial of MAT to BOP inmates, or to unreasonably continue to delay access to MAT for all eligible inmates (3) enjoining the use of SHU for inmates with opiate addiction such as OUD, (4) enjoining delays of licensing adequate Medical providers to treat patients with OUD at USP Tucson and systemwide.

2. Award plaintiff all costs and fees.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 3-4-2023
DATE

_Tammy Potter_
SIGNATURE OF PLAINTIFF

_____
(Name and title of paralegal, legal assistant, or other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____
(Attorney's address & telephone number)

### ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space, you may attach no more than fifteen additional pages. But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.

6

Continuation of Statement of Facts:

Plaintiff is a federal inmate confined in the Special Housing Unit ("SHU") of the United States Penitentiary in Tucson, AZ. ("USP Tucson").

USP Tucson, according to the Health Resources and Services Administration ("HRSA") is a designated Healthcare Provider Shortage Area ("HPSA"). FCC Tucson, the federal prison complex encompassing USP Tucson, is located within one of the three top shortage areas in the State of Arizona. In sum, USP Tucson has a known healthcare shortage.

Opioid Use Disorder ("OUD") is a chronic disease for which medication is an effective treatment. Studies show that up to 65% of incarcerated individuals meet the criteria for a substance use disorder and up to one-quarter of these individuals have OUD. A person diagnosed with OUD when they meet at least two out of eleven criteria that indicate significant impairment resulting from Opioid Use. These criteria are specified by the DSM-5.

Medication Assisted Treatment ("MAT") is a treatment for OUD that combines FDA approved medications which combined with counseling and behavioral therapy. Currently, there are three FDA approved medications

-1-

used in MAT: naltrexone, buprenorphine and methadone.

To dispense opioid drugs in the treatment of OUD, an institution must be certified as an Opioid Treatment Program ("OTP"), by the Substance Abuse and Mental Health Services Administration ("SAMHSA") pursuant to 42 C.F.R. 8.11. Institutions also must meet other regulatory requirements necessary to administer these opiates, and prescribers must possess specific licenses by the Drug Enforcement Administration which are required.

At USP Tucson, Nurse Practitioner Marshall is the sole SHU mid-level practitioner used for MAT screening and treatment decisions. She is a U.S. Public Health Service employee not licensed to prescribe buprenorphine nor the methadone approved by the FDA for MAT. She has told Plaintiff and others that defendant BOP will "never" prescribe methadone, and "rarely" buprenorphine at USP Tucson for MAT. Not because she is not licensed to do so alone, but rather because BOP strongly disfavors the use of either for non-clinical reasons.

The history of correctional systems disuse of methadone and Buprenorphine stems from false and misleading marketing by Alkermes, Inc. the manufacturer of naltrexone. Alkermes Inc. sought to improve on marketing of Vivitrol® when by recognizing

that Vivitrol was not held in high regard by the medical community, Alkermes Inc. focused their own marketing efforts on attempting to convince drug courts, prison wardens, and law enforcement officials that methadone and buprenorphine were less effective than Vivitrol because they contain opioids. Alkermes circulated misleading and deceptive information that only highlighted methadone and buprenorphine drawbacks such as potential diversion despite scientific data supporting the use of methadone and buprenorphine. Because this non-medical audience lacked the sophisticated understanding of treating opioid addiction Alkermes Inc. was sued for seeing these entities as easy marks for misinformation.

Despite the data, Alkermes' aggressive and fraudulent marketing campaign paid off. A survey of criminal justice representatives found overwhelming favor of Vivitrol over methadone or buprenorphine. Vivitrol sales rapidly increased starting in Feb. 2015 eventually increasing total revenues for Alkermes from $28.9 million in 2011 to $209 million by 2016 driven by sales to law enforcement entities, including eventually the BOP.

In 2017 the New York Times published an article

9

exposing Alkermes possession of non-public, internal data showing that nearly 30% of patients relapsed and less than half of patients in studies accepted a second dose. This was followed by other media reports leading federal prosecutors to subpoena documents, and then- U.S. Senator Kamala Harris announced an investigation into Alkermes sales practices relating to Vivitrol.

In 2018, Congress passed the First Step Act to direct the BOP to make MAT available. Defendant BOP refused to follow the law for years resulting in federal courts noting that less than 2% of the 15,000 eligible inmates had access to MAT. At USP Tucson the statistic is worse. See e.g. United States v. Janczewski, 560 F.Supp. 3d 1064, 1067 (E.D. Mich. 2021

Plaintiff meets the criteria for MAT and OUD, but as a result of BOP's intentionally slow expansion of access, the HPSA at USP Tucson, the lack of licensure by medical staff at USP Tucson, and the misrepresentations of Alkermes' Inc. the plaintiff for 3 years has requested treatment and BOP has failed to screen and treat him. And, even if he does get screened NP Marshall has declared BOP will "never" allow Methadone at USP Tucson and will "rarely" use buprenorphine not for clinical reasons but due to the disfavor of non-medical custody and administrative policy and decision making authorities.

10

OUD and substance abuse kills multiple Americans each day. The U.S. Government itself targets for prosecution drug dealers who distribute illicit opioids to Vivitrol patients because they know Vivitrol are susceptible to overdose because they have an incentive to consume more heroin than usual to overcome the Vivitrol blockade, and Vivitrol lacks the opioid reversal medication naloxone that buprenorphine contains. Despite this governmental position in cases like United States v. Bollinger, 893 F.3d 1123 (8th Cir. 2018), its agency defendant BOP persists in supplying inmates with Vivitrol anyways. And, because plaintiff has no power to obtain treatment by a non-prison employed doctor he is required to accept less effective, potentially fatally less effective Vivitrol, which is disfavored by the non-prison medical community because it is well-known that lives are lost more in those using Vivitrol than buprenorphine which contains the life-saving naloxone (also known as NarCan).

Plaintiff is due to be released in less than four months, barely sufficient time to be examined, and tested, to be treated for OUD and stabilized due to the HFSA and other factors that have led to his inability to access MAT.

11

Particularly in SHU at USP Tucson the HPSA is even more severe as the average SHU inmate waits 6 months to be examined when they submit a "sick call request" and the unique escort and security problems in SHU that make clinicians access to inmates substantially more difficult, a delay which likely will result in plaintiff being released before being fully screened, tested and treated for OUD which has occurred multiple times already to inmates such as Christopher Hornyak who was released with OUD and no access to MAT due to the HPSA related issues and delays and lack of licensed MAT providers. It is made worse even than that as USP Tucson's Clinical Director, S. Waite M.D., who called MAT recipients "junkies" in conversations with inmates Robert Adams, Jeremy Pinson and Ernesto Zaragosa-Solis and Ivan Mejia, Daniel Jiminez, Jose Armendariz, Sean Robert Elliot and others which the BOP's own Clinical Guidance entitled "Opioid Use Disorder: Diagnosis, Evaluation, and Treatment" at Table 1 (August 2021) refers to the term "junkie" as "stigmatizing language" that "labels a person by his/her illness" with "demeaning language".

Additionally, the BOP penalizes with a loss of good-conduct time, privileges, housing in general population, access to First Step Act programming and worse, those inmates who use

Opiates even those with OUD which is a disease recognized by the DSM-V. OUD is not under existing BOP policy a defense in a disciplinary proceeding for all inmates, except those already receiving MAT but only for the drugs Methadone or Buprenorphine. In Robinson v. California, the Supreme Court held that a California statute making it a criminal offense for a person "to be addicted to the use of narcotics" violated the Eighth Amendment because punishing a status rather than conduct violate the Eighth Amendment. No BOP assessment under 28 U.S.C. 541.6 for use of, or addiction to, opiates assesses the volitional nature of the use by a person with OUD nor assesses the severity of the individuals' OUD.

Plaintiff, like dozens of USP Tucson inmates, have been threatened with long-term placement in SHU and transfer to a less safe facility if they use the administrative remedy form to complain about staff. On a broder level, BOP has been accused by the DOJ Inspector General, as well as U.S. House and Senate committees in written reports, of a custom and practice of an individuals being retaliated against for filing any complaints or grievances, which is particularly severe at USP Tucson.

13